GEORGE H. WEIGHTMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weightman v. Commissioner
Docket No. 7129-79.
United States Tax Court
T.C. Memo 1981-301; 1981 Tax Ct. Memo LEXIS 442; 42 T.C.M. (CCH) 104; T.C.M. (RIA) 81301; June 18, 1981. George H. Weightman, pro se. Robert J. Alter, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's 1976 Federal income tax in the amount of $ 411.87. The sole issue for determination is whether petitioner, a college professor, is entitled to a home office deduction under section 280A. [1]
FINDINGS OF FACT George H. Weightman (hereinafter petitioner) resided at 250 East 39th Street, Apt. No. 11B, New York, New York 10016 at the time he filed the petition in this case. During the taxable year 1976, petitioner was a full time tenured Associate Professor of Sociology at the Herbert H. Lehman College of the City University of New York (hereinafter sometimes referred to as the college) located in New York City. [2] During this period of time, petitioner taught the following courses each of which met three hours a week: *444 Semester
Course No.
Course Title
Enrollment
Fall 1975 [3]
Sociology 319
Population 24 Undergraduates
Sociology 227
Family 40 Undergraduates
Sociology 239
Social Problems 88 Undergraduates
(2 sections)
Spring 1976
Sociology 231
Social Problems
115 Undergraduates
(2 sections)
Sociology 239
Population 35 Undergraduates
Sociology 750
Family
$ 7 Graduate Students
Fall 1976
Sociology 227
Family 38 Undergraduates
Sociology 231
Social Problems 70 Undergraduates
(2 sections)
Sociology 720
Advanced 6 Graduate Students
Population
Each of these classes met three days each week. The two graduate courses listed above also required individual consultations on a regular basis with the students enrolled therein. In addition, petitioner was required to maintain on-campus office hours for at least three hours each week for the purpose of conferring with undergraduate students. Petitioner *445 had the normal range of duties relating to the classes he taught. He had to prepare and present the lectures, prepare and grade exams, read term papers and occasionally work with students. In addition to teaching, petitioner conducted research and served on various teaching-related committees which met regularly and periodically on the college campus while regular classes were in session. During 1976 petitioner also served as a Faculty Senator in the college government. Petitioner also engaged in professional development. Petitioner considered his role as a researcher more important to Lehman College and to his position with the college than his role as a teacher. Petitioner at various times used the New York Public Library for his research, but most of his research in 1976 was brought back from his field work during the summer months in Canada. See Footnote 2. Petitioner and some of his colleagues felt that in the college's consideration of candidates for tenure and promotion, research was the most important criterion. Petitioner and some of his colleagues believed that candidates must gain recognition in their academic fields by professional development, including research *446 projects, writing, publishing, and attending various conferences. In 1976 petitioner published two book reviews, participated in at least two scholarly panel discussions in California, and attended at least two other academic conferences during the year. [4] He conducted research and wrote a chapter dealing with sociology in the Philippines, but he derived no income from any of his publishing activities in 1976. Professional development work of the type petitioner engaged in takes considerable time, energy, and resources, including space in which to work. During 1976, Lehman College provided petitioner with an on-campus office in which to work and meet with students. He shared this office, which was approximately 11 X 20 feet in size, with two other members of the faculty. The building in which his office was located was open on Monday through Thursday from 8:00 a.m. to 9:00 p.m. and on Friday from 8:00 a.m. to 4:00 p.m. Those were also the hours during which classes were offered at the college and the hours during which the college library was open. The building *447 in which petitioner's office was located was closed on weekends, as was the college library. Petitioner's office was furnished with desks, chairs, filing cabinets, and bookshelves. There was a telephone system which served four offices, but there were no separate telephones at each desk or in each office. The telephone system was for incoming calls only and since 12 or more people received calls on this system, the telephone rang frequently throughout the day. Petitioner maintained office hours in this office at least three hours a week; and if he met with any graduate or undergraduate students outside of the class-room, he met with them in that office. Lehman College is located in the Bronx in New York City. At all times relevant to this case, security was a problem at Lehman College. Numerous burglaries and assaults had been committed in and around the college and even in the building in which petitioner's office was located. Petitioner and some of his colleagues felt that it was not safe to leave any of their personal belongings in their offices nor to stay at the college any longer than necessary. Petitioner did not store any of the books he used for his research or for *448 his lectures in his office on campus. Petitioner would leave a book in his on-campus office only when he was sure he had a duplicate copy of the book, such as a textbook. Furthermore, he would not leave exams and term papers in the office for the same security reasons. Petitioner and some of his colleagues also would not leave personal items such as briefcases unattended for more than a few minutes for fear of theft.
Petitioner and some of his colleagues also feared for their personal safety. Petitioner rode the subway to work, and felt that was also dangerous. Petitioner also feared for his safety in and around the college. During 1975, the college building where petitioner's office was located had been taken over by student demonstrators. In 1976 there was some fear of a similar occurrence, and in 1977 there was another such incident. Although the faculty offices were available throughout the week, petitioner came to the college only when necessary and left as early as possible. He generally left around 2:00 p.m. - 3:00 p.m., spending only four to five hours on campus. His classes generally met three days a week.Petitioner normally tried to schedule any other meetings on *449 one of those three days, with the result that petitioner usually came to the college only on those three days. During 1976 petitioner, a bachelor, lived alone in an apartment located on the East Side in Manhattan. The apartment consisted of a living room, bedroom, small kitchen, and a bathroom. Petitioner was not required by Lehman College, either by contract or as a condition of employment, to maintain an office in his home, but he used a portion of his bedroom as a home office. He prepared his classroom lectures, graded papers and exams, did some research, and did almost all of his professional writing in his home office. Since exam grades had to be turned in within 48 hours, any exams given on Fridays had to be graded at home. Petitioner testified that a specific area or portion of his bedroom was used exclusively as his home office. This specific area was furnished with a desk, a chair, two file cabinets, and three bookcases. In the other portion or area of the bedroom petitioner had his bed and a dresser. He insisted that although the two areas were located within a single room, they were separate and discrete areas. However, the two areas of the room were not separated *450 by any wall, partition, curtain, or other physical demarcation. Certain books that petitioner occasionally used in his work as a college professor and the telephone that he also occasionally used in connection with his job were located in his living room. On his individual Federal income tax return for 1976, petitioner deducted $ 1,042.35 as expenses in connection with his home office. [5] Respondent disallowed the deduction, contending that petitioner did not meet the requirements of section 280A. OPINION The Tax Reform Act of 1976, Pub. *451 L. 94-455, 90 Stat. 1520, changed the law with respect to an office in the home. Section 601(a) of that Act added a new section 280A to the Internal Revenue Code, which strictly limited deductions for expenses of an office in the home, effective for taxable years beginning after December 31, 1975. 90 Stat. 1569-1572. The tax year involved in this case was the first year that the new law was in effect. Section 280A(a) provides that no deduction (otherwise allowable) shall be allowed with respect to the use of a dwelling unit used by the taxpayer during the taxable year as his residence, but section 280A(c)(1) carves out certain exceptions to this general rule of nondeductibility. [6] Petitioner relies upon the exception in section 280A(c)(1)(A), covering situations where the office in the home constitutes the taxpayer's principal place of business. Section 280A(c)(1)(A) provides that the general rule of nondeductibility shall not apply to "any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * as the taxpayer's principal place of business." (Emphasis added.) In the case of an *452 employee, such as petitioner, the exception applies "only if the exclusive use * * * is for the convenience of his employer." Before we get to the "principal place of business" and "convenience of [the] employer" requirements, respondent says petitioner cannot, in any event, satisfy the *453 exclusive use test because his office in the home was not an entire room or some portion or area of a room physically separated in some manner from the rest of the bedroom. It is true that there was no wall, partition, curtain nor any other physical demarcation to separate the office portion of the room from the bedroom portion of that room. The question is whether section 280A(c) requires a separate room or some physically separated portion of a single room. We think it does not, and that the issue is one of fact. Section 280A(c) does not use the word room but simply the term "a portion of the dwelling unit." [7] The legislative history discusses the phrase "a portion of the dwelling unit" solely in the context of exclusive use on a regular basis. The Senate Finance Committee report stated as follows: *454 Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business.The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test. Thus, for example, a taxpayer who uses a den in his dwelling unit to write legal briefs, prepare tax returns, or engage in similar activities as well for personal purposes, will be denied a deduction for the expenses paid o incurred in connection with the use of the residence which are allocable to these activities. * * * [S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 186.] See also H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 853; Joint Committee Explanation, 1976-3 C.B. (Vol. 2) 1, 152. Thus the legislative history speaks only of "a portion of a taxpayer's dwelling unit" or "a specific part of a dwelling unit." Nothing in the statute or its legislative history compels the interpretation urged by respondent. The Court is mindful that Congress intended section 280A(c) to provide "definitive *455 rules" regarding deductions for an office in the home and that Congress wished to alleviate the administrative burdens, uncertainties, and potential for abuse that existed under the prior case law in regard to offices in the home. S. Rept. 94-938, supra, 184-186. Respondent warns that, unless the Court adopts respondent's restrictive view as to what constitutes "a portion of the dwelling unit," it will resurrect these uncertainties and possible abuses. We think the issue is merely a question of fact. The problems of proof are essentially the same whether the Court is asked to determine the exclusive use of an entire room for business purposes or the exclusive use of a portion of that room for business purposes. The Court must resolve any issues of credibility and make its own factual determination based upon all of the evidence in the record. The presence or absence of a wall, partition, curtain, or some other physical barrier separating the two areas is a factor for the Court to weigh. Absent a wall, partition, curtain, or other physical demarcation of the business area, the Court as the trier of fact may well view with a somewhat more critical eye the evidence adduced *456 by the taxpayer to establish that there was in fact some separate, though unmarked, area that he used exclusively and on a regular basis as his home office. Here the Court, having had the opportunity to observe the demeanor of the taxpayer, finds the taxpayer's testimony credible and is convinced that there was a separate area or portion of his bedroom that was used exclusively as his home office. This case is distinguishable on its facts from the situation where the taxpayer's business use and personal use of a single room are so intermingled that the Court cannot make the necessary finding of fact that a specific portion of the room was used exclusively and regularly for business purposes. [8] We are satisfied that petitioner has met the exclusive use test.[9]
*457 The next issue is whether or not petitioner's office in the home can be considered as his principal place of business. We conclude that it cannot. Petitioner was a full time associate professor of sociology at the Herbert H. Lehman College of the City University of New York. His various duties and activities as a college professor are set out in detail in the findings of fact and will not be repeated here. In summary petitioner argues that his office in his home should be treated as his principal place of business, because his office on campus was not, in his opinion, particularly convenient or suitable for his work, because he spent as little time as possible on campus out of concern for the safety of his belongings and his own personal safety, and because he regarded his research activities as more important than his teaching activities. In determining a taxpayer's principal place of business within the meaning of section 280A(c)(1)(A), the Court must ascertain the "focal point" of the taxpayer's business activities. Jackson v. Commissioner, 76 T.C.     (May 4, 1981); Baie v. Commissioner,74 T.C. 105, 109 (1980). *458 The focal point of a teacher's activities would normally be the school where he teaches. While preparation of lectures, grading of papers and exams, and professional development, including research activities, are important and indeed essential to the work of a college professor, they do not serve to shift the focal point of the professor's activities from the school to his office in his home. Just as the preparation of the food in her home was an essential part of the taxpayer's business activities in the Baie case, the focal point of her business was the hot dog stand where the food was sold. Here petitioner was a classroom teacher, and the record does not remotely suggest that the college ever employed him as a researcher rather than as a teacher. Just as we have done in other cases involving teachers, we must conclude that petitioner's principal place of business was the school and not his office in his home. [10] Moreover, petitioner has not established that his use of a home office was for the convenience of his employer. [11] For these reasons, petitioner is not entitled to a deduction for the expenses connected with his office in the home. *459 Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise stated.↩
2. For a two-week period in May-June 1976, Lehman College completely closed its doors and shut down for lack of money. On brief, petitioner petitioner places great emphasis on this period when his on-campus office was not available to him, but he does not mention the two-month period when he worked in Canada and used neither his on-campus office nor his home office in connection with his job as a professor at Lehman College. During the months of July and August of 1976, petitioner worked in Canada, teaching a sociology-related course at Saint Mary's University in Halifax and conducting research on certain Canadian minority groups. The Court will disregard both periods in deciding the issue in this case.↩
3. Although 1975 is not in issue, these courses continued into the winter of 1976, and the parties have stipulated that petitioner taught these various courses during the period from January 1, 1976 to December 31, 1976.↩
4. The deductions for the expenses incurred in connection with these activities are not in issue in this case.↩
5. The parties stipulated that this amount represented an allocation of about 25 percent of the rent ($ 4,073) and five percent of the utility expenses ($ 96) for the apartment for 1976, but 25 percent of both figures comes out to $ 1,042.25. However, the amount petitioner deducted may have included an amount for the business portion of the telephone usage. Petitioner testified that he allocated $ 2.00 per month for the business portion of his telephone expense. If $ 20 (10 months) for telephone is added to the parties' stipulated allocation percentages, it results in a total of $ 1,043.05 which again is close but not the exact figure.↩
6. SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC.
(a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.-- (1) Certain Business Use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) as the taxpayer's principal place of business.↩
7. Respondent's proposed regulations under section 280A(c) fail to define the term but would define "dwelling unit" as including a "house, apartment, condominium, mobile home, boat, or similar property, which provides basic living accommodations such as sleeping space, toilet and cooking facilities." Sec. 1.280A-1(c)(1), Prop. Income Tax Regs.↩ published in Fed. Register August 7, 1980. Some of these dwelling units would not necessarily have rooms as such.
8. See, for example, Gomez v. Commissioner,T.C. Memo. 1980-565, and Weiner v. Commissioner,T.C. Memo. 1980-317↩. 9. Respondent also argues that petitioner fails to satisfy that test, because some of his books and the telephone were located in his living room rather than in the office portion of the bedroom. However, petitioner is not claiming any expenses allocable to the living room, and business telephone expense, if properly substantiated, would be deductible under section 162(a) quite apart from section 280A.Petitioner did not establish the amount of any business telephone expense, and we cannot allow any deduction in that regard. See Footnote 5.↩
10. See Kastin v. Commissioner,T.C. Memo. 1980-341 ([physical education teacher and track and field coach]; [physical education teacher and track and field coach]; Chauls v. Commissioner,T.C. Memo. 1980-471 [college music instructor]; Cousino v. Commissioner,T.C. Memo. 1981-19↩ (on appeal to the 6th Cir.) [junior high school teacher and member of Board of Trustees for local community college]. 11. After the trial, petitioner attached to his brief a letter written by the Lehman College Provost which stated that "use of space and facilities as a professional office in the home of a college faculty member for the performance of college duties is entirely appropriate, helpful, and usually necessary." This letter was not properly offered or introduced into evidence, and cannot be considered by the Court. However, that letter would not satisfy the convenience of the employer test in any event. Congress specifically eliminated the "appropriate and helpful" standard and substituted this convenience of the employer test. S. Rept.No. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185-186; H. Rept. No. 94-658 (1975), 1976-3 (Vol. 2) 695, 852-853; Joint Committee Explanation, 1976-3 C.B. (Vol. 2) 1, 151-152.↩